Earl P. ZINN, Kay R. Zinn, Plaintiffs,

v.

GICHNER SYSTEMS GROUP,
Defendant.

Civ. A. No. 1:CV–94–663.

United States District Court,
M.D. Pennsylvania.

March 23, 1995.

Joseph D. Shein, Philadelphia, PA, for plaintiffs.

Michael J. Plevyak, Malcolm & Riley, Ronald C. Yen, Sharon S. Masters, West Chester, PA, for defendant.

*MEMORANDUM*

CALDWELL, District Judge.

We are considering the Defendant's motion for summary judgment.

## I. *BACKGROUND*

This action was instituted by Earl and Kay Zinn, husband and wife, as a result of an accident involving Earl Zinn on January 29, 1992. At the time of the accident, the Plaintiff[1] was an employee of Y/P Products, Inc. ("Y/P"). Y/P was hired by the Defendant, Gichner Systems Group ("Gichner"), to repair a hydraulic pump system at Gichner's plant. There was a rectangular opening in the floor in close proximity to the pump, which was attached to the top of a large machine. The opening was approximately six feet deep, sixteen feet wide, and thirty feet long. Prior to the accident, Plaintiff requested that the Defendant's representative, David LeCates, provide safety nets or some other means of covering the opening. His request was denied. Additionally, the floor upon which Plaintiff was working was slippery due to the presence of sand and a substance applied by representatives of the Defendant. On January 29, 1992, while repairing the pump, the Plaintiff fell into the hole, sustaining serious injuries.

## II. *LAW AND DISCUSSION*

### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of

---

1. Unless otherwise indicated, the term "Plaintiff" will refer only to Earl Zinn.

the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment", and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

### B. Landowner Liability

■ It is well established in Pennsylvania that the owner of real estate is not liable, except in limited circumstances, to persons injured through the negligence of an independent contractor to whom possession and control of the land was temporarily delivered. *See, e.g., Hader v. Coplay Cement Manuf. Co.,* 410 Pa. 139, 189 A.2d 271 (1963); *Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604 (1991), *alloc. denied,* 530 Pa. 660, 609 A.2d 168 (1992); *Ortiz v. Ra–El Development Corp.,* 365 Pa.Super. 48, 528 A.2d 1355 (1987), *alloc. denied,* 517 Pa. 608, 536 A.2d 1332 (1987). In *Hader,* the Supreme Court stated that

[a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor.... An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his re-

sponsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises. *Hader,* 410 Pa. at 151, 189 A.2d at 277 (internal citations omitted); *see also* Restatement (Second) of Torts § 409 (1965). There are, however, exceptions to this general rule. First, the rule does not apply when the property owner "retains significant control over the work delegated to the contractor." *Lorah v. Luppold Roofing Co., Inc.* 424 Pa.Super. 439, 442, 622 A.2d 1383, 1384 (1993). The second exception is the "Peculiar Risk Doctrine", which is set forth in the Restatement (Second) of Torts §§ 416, 427.

#### 1. Peculiar Risk Doctrine

Section 416 of the Restatement, entitled "Work Dangerous in Absence of Special Precautions", provides that:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Restatement (Second) of Torts § 416. The other half of the Doctrine, entitled "Negligence as to Danger Inherent in Work", states that:

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement (Second) of Torts § 427. These exceptions are "basically interchangeable", and together form the "Peculiar Risk Doctrine." *Lorah,* 424 Pa.Super. at 443, 622 A.2d at 1385 n. 1. "The duties defined in these sections are said to be 'non-delegable';

they impose vicarious liability for the negligence of an independent contractor upon the one who employs the contractor to do work involving heightened risks of physical harm to third parties." *Colloi v. Philadelphia Electric Co.,* 332 Pa.Super. 284, 297, 481 A.2d 616, 622 (1984).

■ The key to a proper application of these sections is the definition of "peculiar risk" and "special danger." *Mentzer,* 408 Pa.Super. at 590, 597 A.2d at 610. "Whether a peculiar risk exists is a matter for the court to decide before submission to the jury." *Lorah,* 424 Pa.Super. at 446, 622 A.2d at 1386. Assuming the Defendant surrendered control of the property to its independent contractor (Y/P), we must determine whether the Plaintiff was faced with a peculiar risk or special danger in connection with his employment duties on Defendant's property. If not, he will not be entitled to recover from the Defendant.

In *Ortiz v. Ra–El Development Corp., supra,* the court held that a situation represents a peculiar risk or special danger if:

1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, i.e., a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measures; and

2) the risk is different from the usual and ordinary risk associated with the general type of work done, i.e., the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary.

*Ortiz,* 365 Pa.Super. at 53, 528 A.2d at 1358. The court then divided the second part of its test into a two-step analysis. *Id.* "First, we examine the risk that would be posed by the general type of work to be performed under typical circumstances." *Id.* "Next, we determine whether the circumstances under which the general work is done, i.e., the

specific project or task, introduces a different kind or level of risk." *Id.* In the present case, the Defendant does not challenge the applicability of the first element of the test enunciated in *Ortiz.* Rather, the dispute concerns the second part of the test.

In *Ortiz,* the plaintiff was injured when he fell from a scaffold. The court, in examining whether the plaintiff met the second part of its test, found that the general type of work being done, construction work on a scaffold, was performed "typically ... at least a few feet off the ground", and was not specially dangerous. *Ortiz,* 365 Pa.Super. at 53, 528 A.2d at 1358. The court then examined the specific project or task (working on a scaffold fourteen feet off the ground) and determined that it "did not pose a risk much greater than that posed by the general work of being on a scaffold a few feet off the ground, and is therefore not specially dangerous." *Id.* Thus, the court held, as a matter of law, that the landowner was not liable for the plaintiff's injuries under sections 416 and 427. *Id.*

At the opposite end of the spectrum is *Colloi v. Philadelphia Electric Co.,* 332 Pa.Super. 284, 481 A.2d 616 (1984). In *Colloi,* the court held that there was ample evidence to submit the issue of an employer's liability to an independent contractor's employee to the jury. The employee was operating a jackhammer on a sidewalk at an electrical substation. Approximately five feet below the surface, he struck an electrical conduit carrying a current of over 13,000 volts and as a result suffered serious injuries. The court held that the Peculiar Risk Doctrine could apply because the employer should have realized that the work would create a peculiar risk of harm unless special precautions were undertaken. *Id.* at 297, 481 A.2d at 622. The "special danger" associated with the plaintiff's duties in *Colloi* was not the fact that he was digging, but that he was digging beneath an electrical substation. *Id.* at 293, 481 A.2d at 620.[2]

---

2. Another example of an instance where the Doctrine applied was *Heath v. Huth Engineering, Inc.* 279 Pa.Super. 90, 420 A.2d 758 (1980), which was cited by the court in *Ortiz.* In *Heath,* an employer was held liable for the death of an independent contractor's employee who was digging a sewer trench and was killed when a wall

collapsed on him because of the independent contractor's negligence. The court in *Ortiz* opined that "[t]he employer [in *Heath*] would be liable under our test because it was not the general type of work done, the digging, that caused Heath's injury, but the specially dangerous circumstances under which the digging was

The present case is distinguishable from *Heath* and *Colloi* because in those cases the activity for which the plaintiff was employed (excavating beneath an electrical substation and digging a sewer trench) created the dangerous situation. In this case, it was not the activity itself which was dangerous (repair of a hydraulic pump system), but it was collateral circumstances (the opening and the slippery floor) that created the danger. These dangers were not "inherent in or normal to the work" for which Plaintiff was employed, as were the dangers in *Colloi* and *Heath.* Restatement (Second) of Torts § 427.

The facts of the present case are analogous to those in *Lorah v. Luppold Roofing Co., Inc.* 424 Pa.Super. 439, 622 A.2d 1383 (1993). In *Lorah,* the plaintiff was an employee of an independent contractor who was injured while carrying equipment down an unsecured ladder into an excavation pit. The trial court granted summary judgment in favor of the landowner, holding, as a matter of law, that the Peculiar Risk Doctrine did not apply to the facts. The Superior Court affirmed, finding that the plaintiff could not meet the requirements of the second prong of the *Ortiz* test. The court found that

> [t]he task to be performed—the movement of rebars of nominal weight down a ladder into an excavation pit—does not involve a risk that is substantially out of the ordinary at a construction site. To the contrary, the task being performed appears to be nothing more than a common or routine worksite procedure. *What made the activity of increased risk was not the activity itself, which is normally of minimal risk, but the failure of the independent contractor (and/or his servants) to take adequate precautions.*

*Id.* at 446, 622 A.2d at 1386 (emphasis added).

done, i.e., in a sewer trench." *Ortiz,* 365 Pa.Super. at 54, 528 A.2d at 1358–59.

3. We reiterate that we are assuming that Y/P, the independent contractor, had been given "control" of the area in which it was working, and thus would be responsible to take precautions against injury. If Y/P was not in control of the area, the limitations on liability espoused in *Hader* do not apply.

In this case, the general type of work being performed, repair of a hydraulic pump system, is certainly not specially dangerous. Further, there is no evidence that the specific task, repair of a hydraulic pump system atop a piece of equipment, is specially dangerous, or represents a peculiar risk. In normal circumstances, there is minimal risk of injury in completing such a duty. As in *Lorah,* the activity itself did not cause an increased risk. Rather, it was the "failure of the independent contractor ... to take adequate precautions" to prevent Plaintiff's injuries. *Lorah,* 424 Pa.Super. at 446, 622 A.2d at 1386. The adequate precautions would have been to secure the six-foot deep opening and to remedy the slippery floor where Plaintiff was working.[3]

We find, as a matter of law, that the activity being performed by the Plaintiff at the time of his injury, repairing a hydraulic pump system, does not represent a peculiar risk or special danger. Therefore, if the Defendant turned over control of the area where the accident occurred to Y/P, Plaintiff will not be entitled to recover against the Defendant pursuant to the rule set forth by the Pennsylvania Supreme Court in *Hader.*[4]

*2. Control by Landowner or Employer*

As set forth above, the rule announced in *Hader* is inapplicable if the Defendant "retain[ed] significant control over work delegated to [Y/P]." *Lorah,* 424 Pa.Super. at 442, 622 A.2d at 1384. Defendant argues that even if *Hader* does not apply, it owed no duty to the Plaintiff pursuant to the Restatement (Second) of Torts § 343A and the doctrine of assumption of risk.

> a. Restatement (Second) of Torts §§ 343, 343A

If the Defendant did not surrender control of the area to Y/P, Plaintiff will be

4. The parties devote extensive portions of their briefs discussing the number of times Plaintiff had performed work while on a ladder at various heights. These arguments would be relevant if the project for which Plaintiff was hired required him to be on a ladder, or even off the floor. However, they are not relevant here since Plaintiff was standing on the floor when he fell through the hole.

deemed an invitee of the Defendant. *See Bleam v. Gateway Prof. Center Assoc.*, 431 Pa.Super. 145, 149, 636 A.2d 172, 174 n. 2 (1993), *appeal denied*, 538 Pa. 639, 647 A.2d 895 (1994). The duty of a landowner with respect to invitees is set forth at Restatement (Second) of Torts § 343:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. However, the duty imposed by section 343 is limited by section 343A, which provides that:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A(1).

■ Defendant asserts that the Plaintiff was aware of the six-foot deep floor opening, [E. Zinn Dep. at 37–39], and that the floor upon which he was working was slippery. [E. Zinn Dep. at 27–29, 56–61]. Thus, the danger was both obvious and known to the Plaintiff, thereby making section 343A applicable to this claim. In opposition, Plaintiff contends that section 343A does not apply to situations where, as here, the possessor of the land, "should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A.

■ The question of whether a danger was known or obvious is usually a question of fact for the jury. *Carrender v. Fitterer*, 503 Pa. 178, 185–86, 469 A.2d 120, 124 (1983). However, the question may be decided by the court where reasonable minds could not differ. *Id.* We believe that reasonable minds could not reach different conclusions

in this instance: not only were the dangerous conditions obvious, but the Plaintiff admitted that he knew of the existence of both the six-foot deep opening and the slippery floor *prior* to his accident. [E. Zinn Dep. at 27–29, 37–39].

However, a landowner is not exempt from liability because a danger is known and obvious if the landowner "should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A. In *Zito v. Merit Outlet Stores*, 436 Pa.Super. 213, 647 A.2d 573 (1994), the court, citing the comments to section 343A, stated that:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, ... where the [landowner] has reason to expect danger because to a reasonable man in [the invitee's] position the advantages of doing so would outweigh the risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

*Id.* 647 A.2d at 575 (citing Restatement (Second) of Torts § 343A, comment f).

■ A jury could conclude that the Defendant should have anticipated the harm that befell Plaintiff, notwithstanding the fact that Plaintiff recognized and understood the danger. Defendant was aware of the slippery conditions where Plaintiff was working because its employees attempted to correct the problem. It was also well aware of Plaintiff's apprehension over working next to the opening, and it knew that no safety measures were undertaken by the independent contractor to prevent injury. Finally, Plaintiff alleges that he was directed, in rather forceful language, to finish the job he was hired to do without delay, and that he believed his and/or his employer's continued employment with the Defendant would be jeopardized it he did not complete the job. A jury could reasonably conclude from these facts that the Defendant should have known that the Plaintiff

would decide that the advantages of continuing his work outweighed the risk of doing so. *Zito,* 647 A.2d at 575. Thus, we cannot hold, as a matter of law, that the Defendant should not have anticipated the harm even though the danger was obvious.

### b. Assumption of Risk

■■■ Defendant also argues that the Plaintiff is barred from recovery because he assumed the risk of his injuries. In Pennsylvania, the doctrine of assumption of risk was severely limited by the Supreme Court in *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993). In *Howell,* Justice Flaherty, writing for the majority, stated that assumption of risk could no longer be used as an affirmative defense, except in limited circumstances not applicable here.[5] *Id.* at 162, 620 A.2d at 1112–13. Rather, "to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as a part of the duty analysis, and not as part of the case to be determined by the jury." *Id.* However, the Court in *Howell* was severely splintered in its decision: two Justices joined the majority opinion, two concurred, two dissented, and one did not participate.[6]

As a federal court sitting in diversity, we must apply the law of the forum to the facts at hand, and when an issue is unresolved, we must predict how the state's highest court would resolve it. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886, 893 (1967); *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3d Cir.1988). It cannot be disputed that assumption of risk still exists after *Howell. See, e.g., Hardy v. Southland Corp.,* 435 Pa.Super. 237, 239–41, 645 A.2d 839, 840 (1994), *appeal denied,* —— Pa. ——, 652 A.2d 1324 (1994); *Greenberg v. General Electric*

*Company,* No. 92–1923, 1993 WL 228902, *8 (E.D.Pa. June 23, 1993), *aff'd,* 19 F.3d 643 (3d Cir.1994). However, because of the Court's fragmented opinion, to what extent the doctrine survived *Howell* is not clear. If it is applicable to this action, it is type 3 assumption of risk [7], which occurs where

> the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it. For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case.

*Howell,* 533 Pa. at 160, 620 A.2d at 1111–12 (citing Restatement (Second) of Torts § 496A). Therefore, we must determine whether type 3 assumption of risk survived the opinion in *Howell,* and, if so, whether it applies to the facts of this case.

The majority opinion in *Howell* expressly stated that type 3 assumption of risk was not abolished because to do so would undermine the public policy of preventing recovery for "self-inflicted" injuries by plaintiffs. *Howell,* 533 Pa. at 162, 620 A.2d at 1112–13. However, the two Justices who concurred in *Howell* agreed with the result only, based upon the specific facts of that case. *Id.* at 163, 620

---

**5.** "[I]n cases involving express assumption of risk, or cases brought pursuant to 402A (strict liability theory), or cases in which assumption of risk is specifically preserved by statute, assumption of risk remains a viable affirmative defense." *Howell,* 533 Pa. at 162, 620 A.2d at 1113 n. 10.

**6.** The Justices who concurred did so in the result only, based upon the fact that the plaintiff and defendant in *Howell* had entered a joint activity that contained a risk, and that under those circumstances neither is liable for injuries to the

other. *Howell,* 533 Pa. at 163, 620 A.2d at 1113. The dissenters argued that the doctrine was consumed by the adoption of Pennsylvania's comparative negligence statute, 42 Pa.C.S.A. § 7102(a). *Howell,* 533 Pa. at 164, 620 A.2d at 1113.

**7.** The term "type 3" refer to the numbered examples set forth in the Restatement (Second) of Torts § 496A.

A.2d at 1113 (Larsen, J., concurring). Therefore, we look to the cases decided since *Howell,* which have concluded that type 3 assumption of risk still exists. *See Hardy,* 645 A.2d at 842 [8]; *Greenberg,* 1993 WL 228902 at *8. As directed by the Court in *Howell,* the doctrine no longer applies as an affirmative defense. Instead, the trial court must "review the factual scenario and determine whether '[u]nder those facts, ... the defendant, as a matter of law, owed plaintiff no duty of care.'" *Hardy,* 645 A.2d at 842 (citing *Howell,* 620 A.2d at 1113) (alterations in original). We believe that a majority of the Pennsylvania Supreme Court would conclude that the public policy behind type 3 assumption of risk mandates that it not be abolished entirely and that it should be applied as directed in *Howell.*

The facts in the present case are indistinguishable from the example of type 3 assumption of risk, set forth at section 496A of the Restatement and cited with approval by the Court in *Howell.* In this case, as in the example, the Plaintiff was to perform work while faced with a dangerous condition, i.e. adjacent to a six-foot deep opening and on a slippery floor. As did the employee in the hypothetical, Plaintiff's request that the landowner remedy the dangerous condition was denied. Thereafter, Plaintiff continued to work notwithstanding the dangerous condition, just as the employee in the example continued to work with the dangerous machine. Thus, by continuing to perform in the face of a known danger, Plaintiff is deemed to have relieved the Defendant of any duty, just as if he had expressly released it from liability. Restatement (Second) of Torts § 496A.

█ Plaintiff does not even attempt to distinguish the present facts from those set forth in section 496A of Restatement. Rather, he contends that we cannot conclude that

he assumed the risk (thereby relieving the Defendant of its duty) because the Defendant still had a duty pursuant to section 343 of the Restatement. [Pl.'s Br. in Opp'n to S.J. at 9]. Although not entirely clear from his brief, it appears that Plaintiff is contending that because, as set forth above, section 343A did not relieve the Defendant of its duty, the Defendant cannot meet the test set forth in *Howell* for assumption of risk.

However, Plaintiff mixes two distinct theories: relief of a landowner's duty to invitees under section 343A and assumption of risk. Under Plaintiff's argument, the doctrine of assumption of risk would be totally abolished since a plaintiff could not relieve a defendant of its duty by assuming the risk of injury unless that defendant was also relieved of its duty through the application of section 343A. Thus, assumption of risk and section 343A would be merged into one doctrine. Certainly the majority in *Howell* did not intend such a result. Neither that court, nor any since, have discussed section 343A in determining whether a plaintiff relieved a defendant of its duty by assuming the risk of injury. In addition to the requirement of a known or obvious danger, a defendant must not have anticipated the danger, notwithstanding its obviousness, to be relieved of its duty under section 343A. Restatement (Second) of Torts § 343A(1). In an assumption of risk analysis, that added element is not required. In *Zito, supra,* the court stated that when a defendant landowner should anticipate harm to an invitee even though a danger is obvious, the obviousness of the danger is not conclusive as to relief of duty under section 343A, but it "is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk." *Zito,* 647 A.2d at 575 (citing Restatement (Second) of Torts § 343A, comment f).

---

**8.** In *Hardy,* the plaintiff fell after walking into a convenience store. She admitted that immediately prior to stepping onto the floor, she glanced at the floor and noticed that it was wet. On this basis, the lower court found, as a matter of law, that the plaintiff assumed the risk. On appeal, the Superior Court reversed the trial court's decision because it determined that the plaintiff did not voluntarily encounter a known risk because the "testimony [did] not establish that [the plain-

tiff] ever interrupted her normal walking gait, noticed the condition of the floor, pondered it for a moment and then proceeded anyway realizing that it may be slippery." *Hardy,* 645 A.2d at 843. *Hardy* is inapposite to this case. Prior to his accident the Plaintiff knew of, and considered the dangers associated with, the opening and the slippery floor. [E. Zinn Dep. at 27–29, 37–39, 56–61].

A plaintiff assumes the risk of injury, thereby relieving the defendant of its duty, when "reasonable minds could not disagree that the plaintiff deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Howell*, 533 Pa. at 162, 620 A.2d at 1113.[9] In *Carrender, supra*, the court discussed the relationship between the duty under section 343 and assumption of risk, and stated that

> When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Carrender*, 503 Pa. at 187–88, 469 A.2d at 125 (internal citations omitted). In this case, the Plaintiff voluntarily encountered a known risk, with full cognizance of the potential dangers associated with that risk, and we conclude, as a matter of law, that Plaintiff assumed the risk of injury and relieved the Defendant of its duty to him.

### III. CONCLUSION

Regardless of whether the Defendant or Y/P was in control of the area where Plaintiff was injured, Plaintiff is not entitled to recovery. If Y/P was in control, Plaintiff is barred from recovery by the Court's decision in *Hader*. If Defendant was in control of the area, the doctrine of assumption of risk relieved it of its duty to Plaintiff.

We will issue an appropriate order.

### ORDER

AND NOW, this 23rd day of March, 1995, upon consideration of the Defendant's motion for summary judgment, filed January 17, 1995, it is ordered that:

1. The motion is granted.

2. The Clerk of Court shall enter judgment in favor of the Defendant and against the Plaintiff, and shall close this file.

---

9. Plaintiff also contends that if we determine that assumption of risk applied, we must consider "the involuntariness of plaintiff's proximity to the subject pit...." [Pl.'s Br. in Opp'n at 9 n. 3]. He argues that he was "forced" to undertake the risk because of his fear of losing his job. Plaintiff's argument is misguided. Such evidence is relevant to defeat a claim that section 343A of the Restatement applies and, in fact, we considered those factors in determining that section 343A did not relieve the Defendant of its duty. However, Plaintiff has not cited, nor has our research revealed, any cases which excuse a plaintiff's assumption of risk due to financial concerns.